R. W. BOONE et al., Plaintiffs,

v.

TILLATOBA CREEK DRAINAGE DIS-
TRICT et al., Defendants.

No. DC 73-54-K.

United States District Court,
N. D. Mississippi,
Delta Division.

July 26, 1974.

Joseph L. Tennyson, Charleston, Miss.,
for plaintiffs.

John W. Whitten, Jr., Charleston,
Miss., for defendants.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This controversy began May 23, 1973,
with the filing of a class action by cer-
tain landowners in Tallahatchie and Ya-
lobusha Counties, Mississippi, against
the Tillatoba Creek Drainage District
and its Commissioners to restrain them
from entering into or negotiating a con-
tract with the United States Department
of Agriculture for the construction,
erection, control, and maintenance of a
drainage district within portions of Tal-
lahatchie and Yalobusha Counties, Mis-
sissippi. The complaint alleged that the

project encompassed 27.7 miles of stream channelization, and the building of dirt impoundments as retardation walls to hold 300 acres of water with a 1200 acre flood level, and charged that Tillatoba Creek Drainage District failed to comply with the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4331 et seq., specifically claiming that no detailed environmental impact statement had been prepared by the Department of Agriculture as the responsible federal agency. A short time thereafter, plaintiffs filed an amended complaint which added the United States, acting through the Department of Agriculture, as a defendant.

On June 29, 1973, this court, after a hearing, issued a preliminary injunction against defendants on a finding that it appeared probable that the defendants, by attempting to proceed with the Tillatoba Creek project without complying with NEPA, including the preparation and filing of an environmental impact statement, were in violation of law. This court held that the flood prevention project, which visualized the channelization, impoundment and related matters affecting Tillatoba Creek and its tributaries in Yalobusha, Tallahatchie and Grenada Counties, was a major federal action that significantly affected the quality of human environment. Because of that plain fact and the admission by the federal defendants that they had failed to prepare an environmental impact statement, the preliminary injunction of this court issued to protect the rights of the plaintiffs, pending compliance with NEPA's provisions.

The defendants subsequently filed a final environmental impact statement prepared by the Department of Agriculture. On May 30, 1974, the court requested plaintiffs to enumerate with particularity the grounds of their objections, if any, to the environmental impact statement filed in court. On June 7, 1974, the plaintiffs responded by filing written objections to the environmental impact statement, essentially as follows:

(1) An endangered specie (the American alligator) was omitted from the final impact statement;

(2) The impact statement failed to give proper consideration to archaeological and historical sites that would be affected by the project; and

(3) Generalized claims that the final impact statement filed failed to properly comment on the alternatives that existed and the impact statement was too vague, too general and too conclusory.

On July 9, 1974, the court held an evidentiary hearing on the issue of the agency's compliance with NEPA and the sufficiency and validity of the final environmental impact statement. After hearing the testimony of the witnesses and the arguments of counsel, the court incorporates herein findings of fact and conclusions of law as required by Rule 52(a), F.R.Civ.P.

The main contention raised by the plaintiffs concerns the conduct of the federal defendants in their efforts to comply with § 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C), which provides in pertinent part:

"(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which

would be involved in the proposed action should it be implemented.

Prior to making any detailed statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State, and local agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of Title 5, and shall accompany the proposal through the existing agency review processes."

 Compliance with NEPA and the sufficiency of an environmental impact statement are issues to be decided in accordance with principles of law set forth in great detail in Environmental Defense Fund, Inc. v. Corps of Engineers of the U. S. Army, 348 F.Supp. 916, aff'd 492 F.2d 1123 (5 Cir. 1974), a case which involved a many-pronged attack by environmentalists on the proposed Tennessee-Tombigbee Waterway project. In addressing these issues, the burden of proof is on the plaintiffs to prove by a preponderance of the evidence that the defendants have failed to adhere to NEPA's requirements. *Environmental Defense Fund, Inc.*, supra.

The plaintiff called three witnesses in this case. Two witnesses were state employees involved in the preparation of the impact statement. The third was an employee of the Mississippi Game and Fish Commission who gave testimony about the general habitat of the American alligator in many areas of the Northern District of Mississippi, including Tillatoba Creek. This court finds from undisputed evidence, and from facial consideration of the environmental impact statement itself, that the impact statement was the product of an interdisciplinary team of specialists, organ-

ized and representing the learned relevant sciences in the field of soil conservation, wildlife, geology, forestry, game and fish, archeology and other special disciplines; and that, as a result of this interaction between these experts in different fields, the cumulative knowledge was compiled after extensive studies. The preliminary draft was circulated among several federal and Mississippi agencies; their views were solicited and incorporated in the final statement. The preparers of the statement, on the face of the document, undertook responsibility to make a detailed and accurate statement of all significant environmental gains and losses incident to the project and comply with the various steps mandated by NEPA; that is to say, to evaluate the impacts that the proposed action would have on the quality of man's environment, both adverse and beneficial, and thus strike a balance of gains and losses in terms of the aesthetic, economic, and other considerations. Also, the preparers undertook to discuss appropriate alternatives to the proposed action and study the relationship between local, short-term environmental uses and the maintenance and enhancement of long-term productivity, along with irretrievable and irrevocable commitment of resources involved in the proposed action, if implemented.

The court has examined the 60-page impact statement and has heard it critically discussed by counsel in oral argument. Once the statement has been made and filed, plaintiffs must carry the burden imposed upon all plaintiffs, i. e., to establish their case by a preponderance of the evidence. It thus devolved upon the plaintiffs in the present action either to controvert the accuracy of data contained in the document or point out omissions from the impact statement of such significance as to mislead or misinform the decision-makers upon an examination of the impact statement, and thus demonstrate either because of its inaccuracies or omissions, the statement did not give a true or reliable estimate of the environmental costs and benefits.

We note that in the case sub judice the plaintiffs have offered no proof of an omission beyond testimony by a Game and Fish Commission officer that the American alligator, not mentioned in the fauna category, should have been specifically listed as a rare and endangered species, with appropriate comment that the Tillatoba Creek and tributaries qualified as suitable habitat for the American alligator.

■ Detailed consideration was given by the federal defendants to all of the fishery and wildlife habitats, in fact, affected by the proposed project; and factually there were no material omissions from the impact statement of the species of animal and fish life actually dwelling within the affected area. If an omission occurred with respect to the alligator species, such would be wholly immaterial since admittedly the other habitats of the American alligator abound, according to the record, throughout the nearby Mississippi Delta. There is no shortage of American alligator habitats —there is only a shortage of American alligators. From the available research, American alligators have never been sighted, or found to exist, in the Tillatoba Creek vicinity. As a result, the sole omission seized upon by plaintiffs could scarcely affect the judgment of the decision-makers.

The plaintiffs' objection that the impact statement failed to give proper consideration to archeological and historical sites affected by the project is adequately rebutted by the impact statement's treatment of historical sites and by testimony of the state's archeology expert that civilization (i. e. farming) and time had destroyed all significant sites to be affected by the proposal and that those remaining were archeologically expendable, and of no historical worth. Plaintiffs took no issue with this testimony. In other respects, plaintiffs criticize the conclusions in the impact statement but did not offer proof to contest their accuracy, or demonstrate that the data be more detailed in order to give the decision-maker a correct appraisal of significant matters.

On the record made, the court concludes that all procedural steps mandated by NEPA have been met, and, moreover, the impact statement is sufficiently detailed in all relevant respects so as to inform the decision-makers of this project, which is yet to be funded by Congressional appropriations, as to the environmental and economic considerations to be borne in mind. Enough is surely stated to enable the decision-makers, upon a fair reading of the instrument, to arrive at meaningful and objective evaluations of the environmental and economic consequences of the project and its impact on man's environment and amenities of human life. We thus hold that all of the procedural requirements imposed by NEPA, as well as the impact statement itself, are in substantial compliance with NEPA's strict requirements.

Only brief comment need be made as to substantive duties imposed on the federal agency under 42 U.S.C. § 4331, and judicial concern as to the merits of the undertaking.

■ At the outset, we note that no evidence has been offered tending to show that the federal agency has acted arbitrarily or irrationally in its decision to recommend this project. On the contrary, the project, despite its future completion cost of more than $2,000,000, will afford flood prevention for nearly 70,000 acres (109.3 square miles), together with improved drainage and accompanying land treatment measures to reduce erosion and sedimentation. These overall land improvements will be of substantial benefit to persons residing in a chronically high unemployment area. The accompanying adverse effects, which were of no more than limited scope, were identified, defined and carefully staked out by the federal defendants. Substantial reasons for proceeding with the project are readily apparent and need not be further delineated. Thus, our oversight or review of

the substantive judgment of the federal decision-makers, whether it be the United States Department of Agriculture or ultimately Congress, comes to an end. 5 U.S.C. § 701 et seq.; *Environmental Defense Fund,* supra. Reminded by the Fifth Circuit that our NEPA review under the Administrative Procedure Act is indeed a "narrow" one as respecting the merits or demerits of the proposed undertaking, we perceive nothing to justify the court in substituting its judgment for that of the federal authorities legally authorized to design and implement the Tillatoba Creek Watershed Project.

Let an order be entered accordingly.